
# ARKANSAS COURT OF APPEALS

### DIVISION III
### No. E-15-31

| | |
|---|---|
| JORI ENTERPRISES, LLC, D/B/A CLUB Z | **Opinion Delivered** November 4, 2015 |
| APPELLANT | APPEAL FROM THE ARKANSAS BOARD OF REVIEW |
| V. | [NO. 2014-BR-7-EC] |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES | |
| APPELLEE | AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Jori Enterprises, LLC, d/b/a Club Z ("Club Z"), appeals from the Arkansas Board of Review's ("Board") decision finding that it is required to pay unemployment insurance taxes for the services performed by its tutors. On appeal, Club Z argues that the Board's decision is not supported by substantial evidence. We affirm.

On February 21, 2014, the Arkansas Department of Workforce Services ("Department") issued an unemployment-tax determination letter of liability to Club Z, concluding that Club Z's tutors were its employees for purposes of unemployment-insurance taxes. On March 11, 2014, Club Z filed a request for a redetermination of coverage by the Department director ("Director") pursuant to Arkansas Code Annotated section 11-10-308 (Supp. 2013), and the hearing was held on October 1, 2014.

At the hearing, Joanne Campbell, the owner of Club Z, testified that Club Z is an in-home tutoring company that matches tutors with clients who need tutoring. When a client

contacts Club Z, Campbell interviews the client to assess their specific needs, such as the particular subject for which the tutoring is needed and the client's schedule. The clients sign a contract with Club Z indicating whether they need a certain number of hours of tutoring or are in need of ongoing tutoring each week. She then refers to Club Z's database of tutors to determine which tutor is a good match for that particular client. Campbell notifies the tutor about the potential client, and the tutor decides whether or not to accept the client as his or her student. If the tutor agrees to accept the client, the tutor then communicates with the client to arrange the day, time, and location of the tutoring session. Campbell indicated that Club Z has a standard range of rates that it charges, although the tutor or the client can sometimes negotiate a different rate with the company depending on the specifics of the assignment. After tutoring services are rendered, the tutor prepares and submits an invoice to Club Z, who then bills the client. Once payment is received from the client, Club Z retains fifty-five percent of the hourly fee and remits to the tutor the remaining forty-five percent. Campbell explained that this is not a one-time referral fee; instead, Club Z retains its percentage fee for each hour that is billed pursuant to its client agreements.

Campbell testified that each of Club Z's tutors is required to sign an "Independent Tutor Agreement." As part of this agreement, the tutor completes and signs a tutor profile, agrees to submit to a background investigation, and agrees to inform Club Z of any health-status changes. The agreement also contains a non-competition clause, which prohibits tutors from soliciting, diverting, or attempting to divert any of Club Z's clients or business opportunities to themselves or to a competitor. Tutors are further prohibited from

contracting with a Club Z client for a period of one year after the termination of the agreement, or alternatively, they are required to pay liquidated damages in the amount of $2,500. Club Z also reserves the right to cancel assignments and to immediately terminate the agreement if a client is unsatisfied.

According to Campbell, Club Z itself does not offer tutoring services but instead operates as a referral or matching service. She indicated that Club Z's tutors typically work full time as licensed teachers or other professionals and that their work for Club Z provides supplemental income. Campbell admitted that the website for her Northwest Arkansas franchise of Club Z states that it "proudly offers one-on-one in-home tutoring for all subjects, pre-K to adult" and that some people could believe from this advertisement that Club Z was a tutoring service.

Ashley Henderson testified that she is a "private contractor" or tutor for Club Z. She indicated that she is a postgraduate student and that her tutoring jobs supplement the income she receives as a research assistant. Henderson stated that she decides whether to accept a particular client and that she contacts the client directly to make arrangements for the time and location of the tutoring sessions. In order to receive payment for her tutoring services, she prepares an invoice with the number of hours worked for each client and submits it to Club Z, who then pays her.

George Myers, a field-audit supervisor for the Department, testified that he had participated in the determination that Club Z's tutors were employees and not independent contractors. He stated that he had concluded from Club's Z's tutor agreement that Club Z

3

exercised control over the tutors by controlling the assignments and the payment details. Myers further testified that he had found that Club Z was in the business of tutoring and that its tutors performed the services at the client's location, which was considered to be an extension of Club Z's place of business under these circumstances.

After the hearing, the Director issued a decision agreeing with the Department's determination that Club Z's relationship with its tutors constituted covered employment pursuant to Arkansas Code Annotated section 11-10-308 and that Club Z was responsible for the payment of unemployment-insurance taxes for the services performed by its tutors. Club Z then appealed to the Board, which affirmed and adopted the Director's decision in an opinion filed on December 12, 2014. Club Z has now timely appealed the Board's decision to this court.

On appeal, the findings of the Board are affirmed if they are supported by substantial evidence. *Barb's 3-D Demo Serv. v. Dir.*, 69 Ark. App. 350, 13 S.W.3d 206 (2000). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. We review the evidence and all reasonable inferences therefrom in the light most favorable to the Board's findings. *Id*. Even where there is evidence upon which the Board might have reached a different conclusion, appellate review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id*. Also, the credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board. *Johnson v. Dir.*, 84 Ark. App. 349, 141 S.W.3d 1 (2004).

Pursuant to Arkansas Code Annotated section 11-10-210(e) (Supp. 2013),[1]

(e) Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that:
(1) Such individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact;
(2) The service is performed either outside the usual course of the business for which the service is performed or is performed outside all the places of business of the enterprise for which the service is performed; and
(3) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

In order for an employer to establish the exemption set forth in section 11–10–210(e), it must prove each of the three requirements in subsections (1)–(3). *Barb's 3-D Demo Serv.*, *supra*. If there is sufficient evidence to support the finding of the Board that any one of the three requirements for establishing the exemption is not met, the case must be affirmed. *Id.* In this case, the Director found that Club Z failed to satisfy the first two prongs of the statutory test, although it did satisfy the third prong. The Board affirmed and adopted the Director's decision.

As noted above, the failure to satisfy even one subsection of the statute requires us to affirm the Board's decision, and because there was clearly substantial evidence to support the Board's finding as to subsection (e)(2), we will discuss this subsection first. Arkansas Code Annotated section 11-10-210(e)(2) requires that the employer establish that the service is

---

[1] Section 11–10–210(e) was amended in April 2015; however, this was four months after the Board's decision in this case, and thus, the amended version of the statute does not apply here.

performed either outside the usual course of the business for which the service is performed

or that it is performed outside of all the places of business of the enterprise for which the

service is performed. The Board made the following findings with regard to this subsection:

> The appellant argued that, in essence, it was merely a referral service with no employees whatsoever. The evidence does not support this argument. The appellant offers "in home" tutorial services and does not advertise itself merely as a referral service. It charges clients by the hour for those tutorial services. It does not simply collect a referral fee from the client and leave it to the tutor to charge for the tutorial services he or she provides. Rather, the appellant has an ongoing relationship with the client and is profiting from the tutoring itself. The Board finds that the employer is engaged in the business of providing "in home" tutorial services.
>
> . . . .
>
> Having concluded that the appellant is in the business of providing in home tutorial services rather than simply being a referral service, it is clear that the activities of the tutors fail prong two of the test. The services which the tutors provide are not outside the normal course of business for the employer. They are exactly the services which the appellant is paid by the client to provide. Moreover, the services are not performed outside of all of the places of the appellant's enterprise as "in home" tutoring indicates the appellant's services are provided "in home," or wherever else the tutor and client agree to meet. Further, the employer's own witness, Joanne Campbell, Owner, also testified that at times visits are made with the client at their home or other locations, in order to assess what type of tutoring services are needed, which also indicates that the services were not performed outside all of the places of the appellant's enterprise.

Club Z continues to argue on appeal that it is merely a referral service and that it is not

in the business of providing tutorial services. However, the Director and Board found from

the evidence presented that Club Z advertises itself as offering "in-home tutoring" services

and that it profits from the tutoring itself, not from a referral fee. Furthermore, Campbell

testified that she often visits with clients at their homes to assess their needs.

In *Mamo Transp., Inc. v. Williams*, 375 Ark. 97, 103, 289 S.W.3d 79, 85 (2008), our

supreme court interpreted the phrase "place of business" in section 11–10–210(e)(2) as "the place where the enterprise is performed." Thus, in *Mamo*, the court found that the employer's place of business was inside the vehicles that the employer had contracted to transport and that it had therefore failed to satisfy subsection (e)(2) of the statute. Also, in *Home Care Professionals of Arkansas, Inc. v. Williams*, 95 Ark. App. 194, 235 S.W.3d 536 (2006), this court found that the employer, HCP, who was a home care referral service, was in the business of providing in-home services for the elderly through its caretakers. Thus, the places of business of the enterprise included the clients' premises, where the caregivers performed the very services by which HCP profited. *See also TNT Cable Contractors, Inc. v. Director*, 2015 Ark. App. 79 (affirming the Board's finding that cable installers were an integral part of TNT's business and that the places of business of the enterprise included the locations of the installation and the roadways between them).

Similarly, in this case, there was sufficient evidence to show that Club Z is engaged in the business of providing tutorial services and that the services that the tutors provide are not outside the normal course of Club Z's business. Further, the services performed are not outside of all of the places of Club Z's enterprise, as its places of business include the homes of its clients or wherever the clients and tutors agree to meet. Thus, there was substantial evidence to support the Board's finding that Club Z failed to satisfy the requirement in Arkansas Code Annotated section 11–10–210(e)(2). It is therefore unnecessary to address the remaining statutory requirements, as Club Z failed to meet its burden to show that it is exempt from paying unemployment insurance taxes on its tutors. Accordingly, we affirm the

SLIP OPINION



Board's decision.

Affirmed.

V<span>IRDEN</span> and K<span>INARD</span>, JJ., agree.

*Richard S. Hardwicke*, for appellant.

*Phyllis Edwards*, for appellee.