2014 Ark. App. 483

# ARKANSAS COURT OF APPEALS

DIVISION III
No. E-13-1242

| | |
|---|---|
| | **Opinion Delivered:** September 17, 2014 |
| SCI, INC.<br><br>APPELLANT<br><br>V.<br><br>DIRECTOR, DEPARTMENT OF<br>WORKFORCE SERVICES<br>APPELLEE | APPEAL FROM THE ARKANSAS<br>BOARD OF REVIEW,<br>No. 2013-BR0001–EC<br><br><br>AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant appeals from the Arkansas Board of Review's (Board) decision finding that it is a covered employer for unemployment insurance tax purposes. On appeal, appellant argues that (1) there was not substantial evidence to support the Board conclusion that the worker was not free from appellant's control and direction in connection with the services performed by the worker, and (2) the Board erred in finding that the relationship between appellant and the claimant constituted covered employment. We affirm.

At some point in time, Sarah Miller filed a claim for unemployment benefits. In a letter dated April 12, 2012, the Department of Workforce Services (Department) advised appellant of the Department's determination that Miller, and any other similarly situated person, was appellant's employee for unemployment insurance purposes. Accordingly, the Department advised appellant that it was subject to unemployment taxes. Appellant

responded in a letter dated April 30, 2012, disagreeing with the Department's determination and timely requesting a determination of coverage with respect to itself.

On November 15, 2012, the Agency Administrative Review Office conducted a telephone hearing on behalf of the Director of the Department. Testifying for appellant, Peter Fidopiastis, appellant's legal counsel, described appellant's services as "back-office support to logistics companies" in which it ensures that the "owner/operator, is paid appropriately, has access to certain benefits through [their] third-party vendor relationships,"[1] and ensures that the "relationship between the independent contractor and the person they are providing delivery services to runs smoothly." He testified that Miller, an owner/operator, delivered for Corporate Transit of America (CTA), one of appellant's clients.

Speaking generally, Fidopiastis's testimony was that appellant did not arrange for deliveries, did not have facilities as most of its work was completed by telephone and/or computer, and did not have employees or locations in Arkansas. If an owner/operator didn't comply with a client's requests—whether for specific contractual requirements such as a background check or specific day-to-day requirements such as an identification badge or t-shirt—the owner/operator "just wouldn't be able to work" for that client. However, the owner/operator could still work for another of appellant's clients. There was a ten-day notice-of-termination-of-employment requirement contained in appellant's  ninety-day

---

[1]Fidopiastis stated that these benefits included the ability to obtain things like car rental, occupational accident insurance, background checks, and tax escrow services from third-party vendors at preferential prices. He asserted that these services were optional.

revolving contract with its owner/operators, of which a violation by either party could result in a breach of contract lawsuit.

As to Miller specifically, Fidopiastis's testimony was that appellant had no communication with Miller on a daily or weekly basis, did not have exclusive use of Miller's delivery services, and did not set Miller's daily schedule. Appellant did not negotiate with Miller for the price of her services as Miller negotiated her own service prices with CTA. Miller would not be paid for her services unless she invoiced appellant's client. Appellant would only go after its client for payment of administrative fees, never Miller.

Though he asserted that appellant did not physically advertise in Arkansas, he did state that appellant had a relationship with courierboard.com, which advertised for it, and such advertising "probably would be shown in Arkansas."[2] He acknowledged that Miller was provided a badge with appellant's name on it. Finally, he asserted that appellant would be able to operate without couriers.

Testifying for the Department, Debbie Carter, DWS Program Operations Manager, testified that the Department stood by its April 12, 2012 letter. In that letter the Department determined (1) that Miller was not free from appellant's control and direction, (2) that the service Miller provided was not performed outside the usual course of appellant's business nor was it performed outside all the places of business of appellant's enterprise, and (3) that Miller was not customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service

---

[2]Miller stated in paperwork that she learned of the job with appellant on Craigslist.

performed. Accordingly, the Department found that Miller was an employee for unemployment insurance purposes and that remuneration paid to her constituted wages for services.

The Department's director issued a decision on February 27, 2013, affirming the Department's decision determining that appellant's relationship to Miller constituted employment for unemployment insurance tax purposes. On March 7, 2013, via letter, appellant timely appealed to the Board. The Board applied factors set forth in Arkansas Code Annotated section 11–10–210(e), which provides:

> (e) Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that:
>
> > (1) Such individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact;
> >
> > (2) The service is performed either outside the usual course of the business for which the service is performed or is performed outside all the places of business of the enterprise for which the service is performed; and
> >
> > (3) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.[3]

The Board affirmed the Department via an opinion issued November 18, 2013, finding that Miller was not free from appellant's control and direction, both under her contract and in fact, pursuant to Arkansas Code Annotated section 11–10–210(e)(1). It did not address the remaining factors. It is from this opinion that appellant timely appeals.

---

[3] (Repl. 2012).

We do not conduct a de novo review in appeals from the Board of Review.[4] Instead, we review the evidence and all reasonable inferences deducible from the evidence in the light most favorable to the Board of Review's findings.[5] The Board of Review's findings of fact are conclusive if supported by substantial evidence, which is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[6] If fair-minded persons could reach the Board's conclusions on the same evidence, we must affirm its decision.[7]

In order to establish the exemption set forth in section 11−10−210(e), an employer must prove each of the three requirements in subsections (1)-(3).[8] Three precedent conditions must exist for these subsections to apply and they are: (1) that services were performed; (2) by an individual; (3) for wages.[9]  If there is sufficient evidence to support

---

[4]*Law Offices of Craig L. Cook v. Dir.,* 2013 Ark. App. 741, at 1, 431 S.W.3d 337, 338 (citing *Snyder v. Dir.*, 81 Ark. App. 262, 101 S.W.3d 270 (2003)).

[5] *Id.*, 2013 Ark. App. at 1–2, 431 S.W.3d at 338.

[6] *Id.*, 2013 Ark. App. at 1, 431 S.W.3d at 338–39.

[7] *Id.*, 431 S.W.3d at 339.

[8] *Barb's 3-D Demo Serv. v. Dir., Ark. Emp't Sec. Dep't*, 69 Ark. App. 350, 354, 13 S.W.3d 206, 208 (2000) (citing *Steinert v. Dir.*, 64 Ark. App. 122, 979 S.W.2d 908 (1998); *Network Design Eng'g, Inc. v. Dir.*, 52 Ark. App. 193, 917 S.W.2d 168 (1996); *Morris v. Everett*, 7 Ark. App. 243, 647 S.W.2d 476 (1983)).

[9] *Home Care Prof'ls of Ark., Inc. v. Williams*, 95 Ark. App. 194, 197–98, 235 S.W.3d 536, 540 (2006) (citing *Palmer's Boutique v. Ark. Emp't Sec. Div.*, 265 Ark. 571, 580 S.W.2d 683 (1979); and *McCain v. Crossett Lumber Co.*, 206 Ark. 51, 174 S.W.2d 114 (1943)).

the Board's finding that any one of the three requirements in subsections (1)–(3) is not met, the case must be affirmed.[10]

The Board found that appellant failed to prove the first prong of the three-part test—namely, that it failed to prove that it did not have control and direction over Miller's performance of her services. It did not address the remaining two prongs upon making this finding since all three prongs must be proved in order to be exempted from being an employer for unemployment insurance tax purposes. For this reason, and because we affirm the Board, this court limits its review to Arkansas Code Annotated section 11-10-210(e)(1).

On appeal, appellant argues that there was no evidence to support the Board's conclusion that it controlled and directed the delivery services performed by Miller. Under Arkansas Code Annotated section 11-10-210(e)(1), an individual performing services for wages is deemed to be an employee, for purposes of unemployment insurance taxes, unless

> [s]uch individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact.

In support of its argument, appellant lists a number of terms from the Owner/Operator Agreement between it and Miller. Appellant specifically notes that (1) Miller was required to provide her own equipment, (2) appellant did not instruct or supervise Miller regarding performance of her delivery, (3) Miller was permitted to perform delivery services for other companies, (4) Miller was permitted to set her own hours and accept or reject any

---

[10] *Barb's 3-D Demo Serv.*, *supra.*

offered delivery opportunity, (5) Miller was responsible for her own expenses, (6) she could use assistants or other replacements to perform the agreed upon delivery service, (7) Miller was paid an amount she negotiated, and (8) she received a Form 1099 because she was responsible for paying her own taxes. Appellant then separately addressed each of the Board's factors, listed below, in its finding that the appellant failed to prove that it did not have control and direction over Miller. We find no merit in appellant's argument.

The Board highlighted the following contractual requirements that appellant placed on its workers: (1) submit to a background test, (1) have a valid driver's license, (3) maintain a vehicle which appellant considered to be in "good operational condition," (4) carry both vehicle and workers' compensation insurance, (5) provide equipment compatible with the customer's equipment, (6) report accidents to appellant as well as the customer within a limited period of time, and (7) wear badges or other identification bearing appellant's name. We agree with the Board that, by making these requirements a condition of being a courier affiliated with SCI and its clients, there was substantial evidence that SCI maintained a great deal of control over Miller. Accordingly, we find that the Board's decision was supported by substantial evidence.

Affirmed.

GLADWIN, C.J., and WOOD, J., agree.

Catlett Law Firm, PLC, by: Christian C. Michaels, for appellant.
Phyllis A. Edwards, for appellee.